1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNDA WASON, an individual, | CASE NO. 09cv2752-LAB (CAB) |
| Plaintiff, | **ORDER OF REMAND** |
| vs. | |
| AMERICAN INTERNATIONAL GROUP, INC., KIMBERLY TENNENT, an individual and DOES 1-50, | |
| Defendants. | |

This case arises out of the termination of Lynda Wason, who contends her former employer, AIG failed to accommodate her disability in violation of Cal. Govt. Code §§ 12940 *et seq.* and wrongly terminated her.  She brings claims against her former supervisor Kimberly Tennent for intentional intention of emotional distress (IIED) and negligent infliction of emotional distress (NIED) under state law.

Defendants removed this action from state court on the basis of diversity jurisdiction. Wason is a California citizen. AIG and its subsidiary Chartis, Wason's former employer, are both Delaware corporations with their principal places of business in New York.  However, Tennent, like Wason, is a California citizen, which ordinarily would destroy diversity. Defendants argue Tennent is a sham defendant, and because she is fraudulently joined, her citizenship can be disregarded and does not destroy diversity.  *See McCabe v. Gen'l Foods*

1    *Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (holding that fraudulently joined "sham

2    defendants" do not destroy diversity).   No other basis for subject matter jurisdiction is

3    identified.  Plaintiff has moved for remand pursuant to 28 U.S.C. § 1447(c), arguing Tennent

4    is not a sham defendant.

5    **I.    Presumptions and Legal Standards**

6            Defendants begin with two presumptions weighing against them.  First, to prevail

7    under a fraudulent joinder theory, a defendant must show either fraud in pleading

8    jurisdictional facts (inapplicable here), or that there is no possibility the plaintiff will be able

9    to establish a cause of action in state court against the alleged sham defendant.  *Hunter v.*

10   *Philip Morris USA,* 582 F.3d 1039, 1044 (9th Cir. 2009) (citing *Smallwood v. Ill. Central R.R.*

11   *Co.*, 385 F.3d 568 (5th Cir. 2004)). This is a "heavy burden."  *Id.*  It requires a "showing that

12   compels a holding that there is no reasonable basis for predicting that state law would allow

13   the plaintiff to recover against the in-state defendant. . . ." *Id.* (quoting *Smallwood*, 385 F.3d

14   at 574).  Because this must be based on the state's "settled rules," the Court is also required

15   to resolve all ambiguities of state law in the non-removing party's favor.  *Macey v. Allstate*

16   *Property and Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D.Cal. 2002) (citing *Good v.*

17   *Prudential*, 5 F. Supp. 2d 804, 807 (N.D.Cal.1998), William W. Schwarzer, A. Wallace

18   Tashima & James M. Wagstaffe, Cal. Prac. Guide: Fed. Civ. Proc. Before Trial, at § 2:685

19   (The Rutter Group 2009)).

20           Second, the burden of showing removal was proper is on Defendants, and any doubt

21   as to the right of removal must be resolved in favor of demand.  *Gaus v. Miles*, 980 F.2d 564,

22   566 (9th Cir. 1992).  "[T]here is a general presumption against fraudulent joinder . . . ."

23   *Hamilton Materials, Inc. v. Dow Chemical Corp*., 494 F.3d 1203, 1206 (9th Cir. 2007).

24           Because Defendants have argued there is no possibility Wason can recover against

25   Tennent, the Court undertakes a 12(b)(6) type analysis.  *County of Hawai'i v. Univev, LLC*,

26   2010 WL 520696, slip op. at *11 (D.Haw., Feb. 11, 2010).  The standard for remand is even

27   more lenient than the standard for dismissal, however:  the removing party must show that

28   the plaintiff has no "cause of action against the resident defendant, and has no reasonable

1  ground for supposing he has, and yet joins [her] in order to evade the jurisdiction of the
2  federal court. . . ." *Id.* (quoting *Aardema Group*, 2009 WL 1748082 at *2 n.1 and *Albi v.*
3  *Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1994)).  In other words, Defendants must
4  show Wason not only has failed to plead a claim, but she could not plead one that
5  California's courts might approve if given the chance.  A showing that Plaintiff will probably
6  lose is insufficient.  The failure to state a claim must be "obvious according to the settled
7  rules of the state . . . ."  *McCabe*, 811 F.2d at 1339.

8  **II.    Factual Background**

9     The complaint identifies Wason as a claims specialist who worked for AIG.
10  (Complaint, ¶ 9) and Tennent as AIG's human resources contact person during Wason's
11  employment, as well as an agent of AIG.  (¶¶ 6, 8.)  Plaintiff began to experience symptoms
12  of hepatitis C and was put on disability leave.  (¶ 9.)  Wason has made a number allegations
13  against Tennent alleging that Tennent misinformed her about how to handle matters
14  surrounding her disability leave. (¶ 14–17.)  The following statement of facts is taken from
15  the complaint, and supplemented with specifics from Tennent's own declaration in support
16  of her opposition to Wason's motion to remand.

17     Among other things, Wason says she told Tennent her doctor had given her a
18  directive saying she needed to take extended medical leave.  Tennent told her she did not
19  need to provide AIG with the doctors' notes and should deal with Hartford, the disability plan
20  administrator, directly.  This interchange happened in late December or early January, 2009.
21  Wason called Hartford, which said it had to decide whether she would be given short- or
22  long-term leave.

23     Hartford sent Wason a letter requesting information, using an old address.  The letter
24  was returned as undeliverable and Hartford sent a second letter, which was also returned.
25  Tennent knew both letters had been returned, and knew Wason's actual address.  Tennent
26  then on February 10, 2009 sent Wason a brief letter Wason she was on "unjustified leave
27  of absence starting January 8, 2009."  (Opp'n to Mot. for Remand, Tennent Decl., Ex. D).
28  / / /

1    The letter went on to say:

2       **Option 1**

3       It is necessary that you either:

4              •   return to work on Tuesday, February 17, 2009
               •   be approved for other time off by your manager or
5              •   resign your position with the Company[.]

6    (*Id*.)  The letter did not give any other options or say what would happen if Wason did none

7    of the three, but Defendants apparently interpret it as meaning she would be deemed to

8    have resigned.  UPS records show the letter was delivered to someone named Haynes on

9    February 12, but later returned to Tennent on February 24, apparently unopened.    On

10   February 17, Tennent called Wason at a phone number in her personnel file, heard a

11   message saying the number had been disconnected, and made no further efforts to contact

12   Wason.  She arranged for a final paycheck to be sent.  That check was also returned by

13   whoever received it.

14        On February 26, Tennent received a change of address form dated January 28

15   providing a new telephone number for Wason, as well as a different address, matching the

16   one on the letters Hartford sent.

17        On March 2, Wason had not heard back from Hartford and called them.  Hartford told

18   Wason her file was closed because it had not received her doctor's disability certification.

19   Wason called Tennent, who told Wason that because there was no doctor's note in her file,

20   she had been unauthorizedly absent and AIG considered her to have voluntarily terminated

21   her employment.

22        Wason alleges Tennent deliberately used an old address to notify her and did not call

23   her even though Tennent had her phone number.  She says her phone was operational

24   during this time.  Wason alleges she wrote to Tennent asking Tennent to straighten out the

25   misunderstanding but Tennent wrote back saying AIG maintained its decision.  Wason

26   alleges that she was emotionally devastated by being fired while she thought she was on

27   leave, losing disability leave, having to pay high COBRA premiums, and having to undergo

28   treatment for hepatitis C knowing she had no job to return to.

1   Wason alleges all acts taken against her, including those by Tennent, were done
2   maliciously with the intention of oppressing and injuring her.  (Complaint, ¶ 46–50) or, in the
3   alternative, that they did these things negligently causing her anguish, distress, and turmoil.
4   (*Id.*, ¶ 52–55.)

5   **III.    Discussion**

6   **A.    Whether Termination of an Employee Can Make a Supervisor Liable**
7   **for IIED or NIED**

8   Defendants' position is set forth in the notice of removal and their opposition to the
9   Motion to Remand.  They argue that claims against Tennent are preempted by California's
10  worker's compensation law and that because Tennent was a supervisor, not the employer,
11  there can be no worker's compensation claim against her.

12  **1.    The "Compensation Bargain"**

13  Defendants rely in part on *Johns-Manville Products Corp. v. Superior Ct. of Contra*
14  *Costa County*, 27 Cal.3d 465 (1980).  There, a plaintiff sued his employer for intentionally
15  concealing the dangers of asbestos and failing to provide him adequate protective devices.
16  The court held that was preempted by the worker's compensation law, but the plaintiff could
17  nevertheless pursue a common law fraud action for aggravation of his injury caused by
18  subsequently concealing his condition from doctors.

19  As a general rule, conditions of employment that are within the bargain employees
20  make with employers are covered by worker's compensation, and others are not.
21  *Johns-Manville*, 27 Cal.3d at 477.  Claims for unfair termination and acts leading up to it will
22  usually arise out of the employment relationship.  *Shoemaker v. Myers*, 52 Cal.3d 1, 20
23  (1990).  Therefore, even emotional distress caused by unfair or outrageous termination is
24  exclusively covered by worker's comp.  *Id.* at 25.  The California Supreme Court also held:

25   So long as the basic conditions of compensation are otherwise satisfied
    (Lab. Code, § 3600), and the employer's conduct neither contravenes
26   fundamental public policy nor exceeds the risks inherent in the employment
    relationship, an employee's emotional distress injuries are subsumed under
27   the exclusive remedy provisions of workers' compensation.

28  *Livitsanos v. Superior Court*, 2 Cal.4th 744, 754 (1992) (some citations omitted).  Wason

- 5 -                                                    09cv2752

1    relies primarily on the "nor exceeds the risks inherent in the employment relationship"

2    exception, as also recognized in *Johns-Manville*, and secondarily on the public policy

3    exception.

4        When ruling on the "exceeds the risks" exception, California courts reject claims

5    based simply on termination, even if accompanied by loss of reputation or emotional harm.

6    *Millecam v. ChevronTexaco Corp.*, 2009 WL 378780 (Cal. App. 1 Dist. Feb. 17, 2009) (citing

7    *Shoemaker v. Myers*, 52 Cal.3d 1, 25 (1990)).   This is true even if the termination is

8    outrageous or motivated by an intention to cause emotional distress or injury.  *Fermino v.*

9    *Fedco,* 7 Cal.4th 701, 712 (1994).  Promotions, demotions, criticism of work practices, and

10   frictions in discussing grievances are a normal part of the employment relationship.  *Cole v.*

11   *Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (1987).

12       An employer's behavior while dealing with employees can be outside the

13   compensation bargain if the evidence shows it was beyond what would be considered

14   normal aspects of an employment relationship.   If an action contravenes a fundamental

15   public policy (*e.g.*, discrimination, harassment, strike-breaking, termination for refusal to

16   testify falsely), it cannot be viewed as a risk of employment or a normal part of the work

17   relationship.  *Fermino*, 7 Cal.4th at 714-15.

18       In some cases a particular action can be a normal part of the employment relationship

19   if it is properly handled or justified, but not if improperly done, excessive, or unjustified.  For

20   instance, interrogation and temporary confinement of an employee for purposes of

21   investigating petty theft may be within the compensation bargain, while unreasonable

22   detention intended to coerce a confession would not be.   *Fermino*, 7 Cal.4th at 717.

23   Similarly, disciplinary actions such as reprimands are part of the compensation bargain, but

24   disciplinary actions carried out in a humiliating fashion unrelated to business needs are not.

25   *See Operating Engineers Local 3 v. Johnson*, 110 Cal.App.4th 180 (Cal. App. 1 Dist. 2003);

26   *Davaris v. Cubaleski*, 12 Cal.App.4th 1583, 1591 (Cal. App. 2 Dist. 1993).

27       Fraudulent behavior can also take an action outside the compensation bargain even

28   if it is connected with one of the normal personnel functions.  This is because if an employer

commits fraud, it steps outside its "proper role" as employer. *Lenk v. Total-Western, Inc.*, 89 Cal.App.4th 959, 971–72 (Cal. App. 5 Dist. 2001) (quoting *Cole*, 43 Cal.3d at 161.) "Extrinsic fraud, like harassment, is 'not conduct of a type necessary management of the employer's business.' . . . . The Legislature never intended that an employer's fraud be encompassed within the risk of employment." *Piscitelli v. Friedenberg*, 87 Cal.App.4th 953, 987–88 (Cal. App. 4 Dist. 2001) (citing *Reno v. Baird*, 18 Cal.4th 640, 646 (1998); *Ramey v. Gen'l Petroleum Corp.*, 173 Cal.App.2d 386, 402--03 (1959)).  For example, fraudulently inducing someone to relocate and take a job with one's company is not part of the bargain because fraudulent inducement "simply does not reflect matters that can be expected to occur with substantial frequency in the working environment." *Lenk*, 89 Cal.App.4th at 972. Fraudulent concealment of the cause of action against a third party is likewise not within the bargain. *Ramey*, 173 Cal.App.2d at 402–03.    As noted, *Johns-Manville* held that concealment of hazards in the work environment was preempted by the worker's compensation statute, but then went on to explain that other related fraudulent behavior, such as concealment of the worker's injury, preventing him from obtaining treatment,  was not preempted.   27 Cal.3d at 477.

In light of these authorities, a California court might hold the additional allegations against Tennent, beyond her role in terminating Wason's employment, were outside the compensation bargain because they accuse Tennent of fraudulent behavior, interference with a benefit claim, and possibly discrimination.  Furthermore, the actions Tennent stands accused of are very likely against AIG's own policies and unrelated to any legitimate business need, and therefore cannot be considered part of an employer's "proper role," *Lenk*, 89 Cal.App.4th at 972, or "conduct of a type necessary for management of [AIG's] business." *Piscitelli*, 87 Cal.App.4th at 987–88.  The Court cannot with any confidence say such claims are preempted by California's worker's compensation statute, under the settled law of California.

/ / /

/ / /

### 2. *Sheppard* Immunity

Defendants also rely on a doctrine known as *Sheppard* immunity, based on *Sheppard v. Freeman*, 67 Cal. App. 4th 339, 349 (1998). Simply stated, the doctrine says employees cannot be individually liable for their acts or words relating to personnel actions unless their liability arises statutorily. This is an appellate court decision, but the doctrine has not been adopted by the state supreme court.

Defendants cite the more recent decision in *Miklosy v. Regents of the Univ. of Calif.*, 44 Cal.4th 876 (2008), which they claim has cleared up the field and has shown that a terminated employee cannot sue a supervisor for IIED or NIED for wrongful termination. *Miklosy* makes clear that because no one other than an employer can discharge an employee, *id*. at 901 and n.8, Wason cannot bring a claim against Tennent for wrongful discharge. When acting as a supervisor and terminating an employee, Tennent is acting for the employer, not on her own behalf.

Tennent also could not be liable for conspiracy to commit wrongful discharge. Cal. Jur 3d, Employer and Employee, § 100 ("A person who is not the employer, who cannot commit the tort of wrongful discharge in violation of public policy, cannot be liable for a conspiracy to wrongfully discharge the employee.") Because Wason cannot sue her employer for emotional distress arising from a simple firing, she also cannot bring a claim against Tennent simply for causing emotional distress by firing her, even if the firing is retaliatory. Therefore, *Sheppard* immunity partly shields Tennent.

In response, Wason argues that wrongful termination claim goes beyond the bare claim that Tennent effected the termination and that the termination was wrongful; rather, she has alleged Tennent participated in discrimination. Discrimination, she argues, is outside what an employee has bargained for. Wason also alleges Tennent lied to her about company policy and concealed the fact that notification letters had been returned undelivered. Wason also alleges Hartford (the insuror charged with managing disability claims) had approved her taking medical leave but rescinded its approval after hearing that AIG had fired Wason.

### 3.    Other Federal Decisions

Federal case law is in disagreement.  The U.S. District Courts for both the Central and Northern Districts of California have recently considered (post-*Miklosy*) whether a supervisor in similar circumstances was a sham defendant. *See Charles v. ADT Sec. Servs*., 2009 WL 5184454 (C.D.Cal., Dec. 21, 2009); *Dagley v. Target Corp*., 2009 WL 910558 (C.D.Cal. March 31, 2009); *Barsell v. Urban Outfitters, Inc*. 2009 WL 1916495 (C.D.Cal., July 1, 2009), *Asurmendi v. Tyco Electronics Corp*., 2009 WL 650386 (N.D.Cal. March 11, 2009).

In *Dagley*, the court examined a very similar case in which a supervisor who had fired an employee was alleged to be a sham defendant.  The plaintiff alleged discrimination because of a medical condition.  The court agreed that mere termination of the employee would not suffice, but that violating an employee's "fundamental interest . . . in a deceptive manner that results in the plaintiff being denied rights granted to other employees" might suffice to show IIED. 2009 WL 910558 at *3 (quoting *Gibson v. American Airlines*, 1996 WL 329632 at *4 (N.D.Cal. 1996)).  *Gibson*, in turn, rested on *Rulon-Miller v. IBM Corp*., 162 Cal. App. 3d 241, 254 (1984) (overruled on different grounds in *Foley v. Interactive Data Corp*., 47 Cal.3d 654 (1988)) and *Guz v. Bechtel Nat'l Inc*., 24 Cal.4th 317 (2000)) (holding that when a supervisor's behavior goes beyond the act of termination, it is "for the court to determine whether on the evidence severe emotional distress can be found").

In *Asurmend*i, the court analyzed California precedents and concluded "a supervisor . . . may be held personally liable if the offending actions go beyond what is necessary to execute the policies of the employer."  2009 WL 650386 at *4.  (citing *Reno v. Baird*, 18 Cal.4th 640, 657 (1998)).  This holding was made in the context of a harassment claim, but also applied the same holding to the IIED claim.  This case examined whether a supervisor could be held individually liable, and not the preemption issue

In *Barsell*, the court considered and analyzed the leading cases Defendants rely on and found they do not prevent a plaintiff for suing for discrimination, because discrimination is not part of the bargained-for employment relationship. 2009 WL 1916495 at *3–*4. / / /

1  *Barsell* expressly considered whether an IIED claim is preempted by California's worker's

2  compensation law.

3        Like *Dagley*, the facts and claims in *Barsell* are similar to this case. In *Barsell*, the

4  plaintiff alleged she was fired for taking time off work because of her disability (depression).

5  She said that after returning to work after a brief absence she was confronted with a falsified

6  statement showing repeated tardiness.  She took off work a second time for treatment and

7  says her employer informed her she was fired by calling her husband and leaving a message

8  with him while she was being treated in the hospital.  The court found this arguably could

9  give rise to a claim for IIED.  The court noted that terminating someone in a deceptive or

10  particularly callous way knowing they are susceptible to emotional distress might be

11  considered outrageous and going beyond the employment relationship. The court concluded

12  "Because this claim [for IIED] is based on allegations of disability discrimination, there is a

13  non-fanciful possibility that the workers' compensation exclusivity provisions do not bar [the

14  claim]."  2009 WL 1916495 at *4.

15        Defendants in response cite two cases, which they cite to show *Barsell* was wrongly

16  decided.  One is *Gaw v. Arthur J. Gallagher & Co.*, 2008 U.S. Dist. Lexis 9188 (N.D.Cal. Jan.

17  9, 2008).  That decision did not examine preemption at all, however, because the plaintiff

18  conceded that point.  The second is *Barefield v. Board of Trustees of Cal. State Univ.*, 2007

19  WL 3239288 (E.D.Cal. Nov. 2, 2007).  On reconsideration, the court held that an IIED claim

20  against a supervisor for discriminatory termination could not succeed as a matter of law and

21  that the plaintiff could proceed against the employer only.

22        *Barefield* is also inapposite for two reasons.  First, it dealt with discriminatory

23  termination without harassment or IIED, and the court held mere discrimination, without

24  more, could not give rise to an IIED claim.  Second, the court was exercising supplemental

25  jurisdiction.  As such, it was not required to apply the lenient standard this Court is bound to

26  apply, but instead was required to predict how the California Supreme Court would rule on

27  questions of state law.  The Eastern District there relied on state appellate decisions and

28  federal decisions, not on a "settled rule" of state law.

1    The Court therefore concludes Wason is not clearly barred from bringing a claim

2    against Tennent under the settled law of California.

3    **B.    Whether Wason States a Claim for IIED or NIED at All**

4    Defendants also argue Wason has failed to state a claim.  A plaintiff can recover for

5    IIED if the behavior is "extreme and outrageous" and "beyond the bounds of human

6    decency."  *See Helgeson v. Am. Int'l Group, Inc.*, 44 F. Supp. 2d 1091, 1095–96 (S.D.Cal.

7    1999) (citing cases applying California law to various factual situations).  More specifically,

8    the elements of the tort of IIED are: (1) extreme and outrageous conduct by the defendant

9    with the intention of causing, or reckless disregard of the probability of causing, emotional

10   distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and

11   proximate causation of the emotional distress by the defendant's outrageous conduct.

12   *Christensen v. Superior Ct.*, 54 Cal.3d 868, 903 (1991).

13   In California, NIED is more accurately described as one theory of recovery in a

14   negligence action, rather than as a separate tort:

15       Damages for severe emotional distress . . . are recoverable in a negligence
16       action when they result from the breach of a duty owed the plaintiff that is
         assumed by the defendant or imposed on the defendant as a matter of law,
17       or that arises out of a relationship between the two.

18   *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 590 (1989).  It is

19   separate from IIED , and requires a showing of

20       (1) serious emotional distress, (2) actually and proximately caused by (3)
21       wrongful conduct (4) by a defendant who should have foreseen that the
         conduct would cause such distress.

22   *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004) (citation omitted).

23   Defendants characterize the allegations as "boilerplate" and insufficient.  However,

24   in light of the standards the Court is bound to apply, they are sufficient.  Accepting the

25   allegations as true, a state court or jury could conclude Tennent for reasons of her own[1]

26   _____

27       [1] Plaintiff does not allege what Tennent's reasons were, but it is evident she believes
     her employer was engaged in discrimination, so it is likely she believes Tennent had a
28   similarly discriminatory motive.  The factual allegations tend to show Tennent thought Wason
     was malingering or for some other reason did not deserve to be put on leave.  This would
     support a discriminatory motive personal to Tennent.

callously or at least negligently caused Wason to unintentionally resign her job and lose her benefits at a time Tennent would have reason to know she would be particularly vulnerable, and which actually caused her severe emotional distress.

It is worth remembering that while employers typically communicate with employees regarding benefits, such communications are not necessarily made in the course of the employment relationship.  This responsibility can be delegated to others, such as third-party administrators, who could in turn be liable for IIED.  In *Hernandez v. Gen. Adjustment Bureau*, 199 Cal.App.3d 999 (1988), for instance, a claimant gave an insurance adjuster records and reports detailing serious medical and psychological problems.  The adjuster allegedly knew of the claimant's fragile emotional condition and financial need yet consistently delayed disability payments for reasons unrelated to claim disputes.  This was held to state a claim for IIED.  *Id*. at 1007.  While Tennent's position gave her easy access to Wason's records and written communications and may have led Wason to trust her, Tennent's position with Wason's employer is not an element of the claims.  As in *Hernandez*, Wason might be able to establish that Tennent interfered with her receipt of disability benefits, causing serious emotional distress.

The Court therefore concludes a California court could hold Wason has stated a claim against Tennent for either IIED or NIED.

**IV.    Conclusion and Order**

For these reasons, the Court concludes Tennent is not a sham defendant, and diversity is therefore lacking.  Because this Court lacks jurisdiction, as required under  28 U.S.C. § 1447(c), this action is hereby **REMANDED** to the Superior Court of the State of California for the County of San Diego, Central District.

**IT IS SO ORDERED**.

DATED:  May 5, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge